## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TRAVIS ANDERSON,
     Plaintiff,

     v.

WATERBURY POLICE DEPARTMENT,
RYAN CUBELLS, MARTIN SCANLON,
and GILBERT,
     Defendants.

No. 14-cv-829 (VAB)

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, Travis Anderson, brings this case against Defendants, the Waterbury Police Department ("Waterbury PD"), Waterbury Police Department Officers Martin Scanlon and Lee Gilbert (collectively, the "Waterbury Defendants"), and former Waterbury police officer Ryan Cubbells. ECF No. 45. Anderson brings claims under 42 U.S.C. § 1983 ("Section 1983"), alleging that the individual Defendants subjected him to unreasonable search and seizure and excessive force in violation of the Fourth Amendment, and that Waterbury PD is also liable for these violations by the individual Defendants, due to a failure to properly train and supervise them. Anderson also alleges that Cubbells is liable for the intentional infliction of emotional distress under Connecticut state law. Defendant Cubbells has filed a motion for summary judgment on all claims, ECF No. 47, as have the other Defendants, ECF No. 48.

For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part the Defendants' motions for summary judgment. Specifically, the Court grants summary judgment as to Count One, alleging unreasonable search and seizure and as to Count Three, alleging that the City of Waterbury and/or the Waterbury PD are liable because of policies or customs

1

exhibiting deliberate indifference to constitutional rights, in part because Anderson concedes these arguments.  Defendant Waterbury PD is, therefore, terminated from this case.  The Court denies summary judgment as to Count Two, as to Anderson's claim against Cubbells regarding the December 23, 2013 post-arrest search; as to Anderson's claim that Cubbells struck him on November 3, 2013 and struck him and slammed him against the police vehicle on December 23, 2013; and as to Gilbert and Scanlon's failure to intervene claims in relation to these incidents. The Court also denies summary judgment as to Count Four, Anderson's claim that Cubbells is liable for intentional infliction of emotional distress, as Defendants' motions for summary judgment fail to discuss this claim.

## I.     FACTUAL BACKGROUND

Anderson is a resident of the state of Connecticut.  Second Amend. Compl. ¶ 4, ECF No. 45.  Cubbells, Gilbert, and Scanlon were, at all times relevant to this case, police officers employed by the City of Waterbury.  Cubbells Rule 56 Statement ¶¶ 2-4, ECF No. 47-2.

On either October 3, 2013 or October 6, 2013, Anderson testifies that he encountered Cubbells on one occasion.  Anderson Dep. 23:23-25, 26:20-24, 27:14-20, Def.'s Ex. D, ECF No. 47-6.  He testifies that it was sometime between 3:00 p.m. and 5:00 p.m.  Anderson Dep. 27:18-20, Def.'s Ex. D.  Anderson had alleged that Cubbells approached him while he was in front of his apartment building in Waterbury, Connecticut, and that Cubbells had verbally harassed him and threatened to one day soon catch Anderson and get him.  Second Amend. Compl. ¶¶ 8-9.  Anderson further alleges that, during this first encounter with Cubbells, Cubbells referred to him and a "Puerto Rican" woman as "you people."  Anderson Dep. 20:22-23-4, ECF No. 47-6.  Cubbells disputes these fact and claims he had never encountered Anderson before November 3, 2013.  Cubbells Rule 56 Statement ¶ 7; Cubbells Aff. ¶ 15, Def.'s Ex. A, ECF No. 47-3.  The

parties do not dispute that no one searched nor arrested Anderson during this alleged first encounter with Cubbells.  Cubbells Rule 56 Statement ¶ 6.

### A.      November 3, 2013

On November 3, 2013, around midnight, Cubbells and Gilbert were patrolling the area of West Main Street near Sperry Street in Waterbury.  Cubbells Rule 56 Statement ¶ 8.  The parties dispute whether Cubbells and Gilbert first encountered a Subaru driven by Anderson while they were driving behind him or when they were driving in the opposite direction from him.  *See* Cubbells Rule 56 Statement ¶¶ 9-11, Anderson First Rule 56 Statement ¶¶ 9-11, ECF No. 54-1. According to Defendants, Cubbells and Gilbert were driving in the opposite direction from Anderson, so they needed to execute a U-turn to follow Anderson's vehicle in their police vehicle.  Cubbells Rule 56 Statement ¶ 12.  At the time of the November 3, 2013 encounter, Anderson testifies that he was driving a Subaru that belonged to Anderson, though a friend, Lindsay Boylan, registered and insured the vehicle in her name on his behalf.  Anderson Dep. 27:21-28:14, Def.'s Ex. D.

### 1.      Traffic Stop

Cubbells and Gilbert testify that Anderson's vehicle then made a left turn without activating the left turn signal, which Anderson disputes.  Cubbells Aff. ¶ 6.  Anderson testifies that he activated his turn signal before turning left.  Anderson Dep. 37:6-8, Def.'s Ex. D. Cubbells and Gilbert also testify that they observed the driver of the Subaru drinking from a silver and blue can that they believed to be a can of beer.  Cubbells Aff ¶ 4; Gilbert Aff. ¶ 4, Def.'s Ex. B, ECF No. 47-4.  Anderson disputes this fact, testifying that, while there was a can of Natural Ice beer in the car, neither he nor the passenger in the car, Colina Andrews, was drinking from it.  Anderson Dep. 31:16-32:8, Def.'s Ex. D.  Anderson testifies that the can of beer in the

car was closed.  *Id.* 32:6-8.  The parties agree that the can of beer was in a cupholder above the radio, on or around the dashboard.  *Id.* 39:22-41:12; Cubbells Rule 56 Statement ¶ 18.

     Cubbells and Gilbert testify that they stopped Anderson's vehicle because they observed the driver drinking from what they believed to be a can of beer and because the vehicle did not activate its left turn signal.  Cubbells Rule 56 Statement ¶ 13.  After Anderson's Subaru made the left turn, Cubbells activated the lights and siren on the police vehicle, and the Subaru pulled over in response.  *Id.* ¶¶ 14-15.  Cubbells approached the driver's side of the vehicle and Gilbert approached the passenger side.  *Id.* ¶ 16.  The parties dispute whether Cubbells and Gilbert could have detected the smell of fresh marijuana coming from the car.  *Id.* ¶ 17; Anderson Aff. ¶¶ 13-14, Pl.'s Ex. B, ECF No. 54-4.  Anderson testifies that no one had smoked marijuana in the Subaru that evening and that the vehicle did not smell like marijuana.  Anderson Aff. ¶¶ 13-14.  Anderson admits that there was marijuana in the car, in a book bag in the backseat.  Anderson Dep. 48:11-14, Def.'s Ex. D.

### 2.     Conversation Between Cubbells and Anderson

     The parties dispute what happened after Cubbells approached the driver's side of the vehicle and Gilbert approached the passenger side.  *See* Cubbells Rule 56 Statement ¶¶ 19-26; Anderson First Rule 56 Statement ¶¶ 19-26.  Cubbells testifies that he requested Anderson's license, registration, and insurance information when he reached the driver's side window.  Cubbells Rule 56 Statement ¶ 19.  According to Cubbells, Anderson seemed agitated and asked why the officers had stopped him.  *Id.* ¶ 20.  Cubbells then explained to Anderson why he was stopped.  *Id.* ¶ 22.  Cubbells testifies that Anderson did not comply with his order that Anderson should keep his hands visible and in front of him, and that Anderson instead kept touching an

area near his right pants pocket and the right side of his waistband. *Id.* ¶¶ 23-24. Cubbells testifies that, once back up arrived, he asked Anderson to step out of his vehicle. *Id.* ¶ 25.

Anderson disputes all of these facts. Anderson First Rule 56 Statement ¶¶ 19-24. Anderson instead testifies that Cubbells immediately ordered him to exit the vehicle, without even asking for his license and registration and before any back up came. *Id.* ¶¶ 19, 25. He testifies that he was not agitated but that he did ask Cubbells why Cubbells wanted him to step out of the vehicle, but that Cubbells never answered his question. *Id.* ¶ 20. He further testifies that he kept his hands in front of him on the steering wheel and visible to Cubbells at all times, without making any movements to touch the area near his right pants pocket and the right side of his waistband. *Id.* ¶¶ 23-24.

### 3. Arrest and Search

The parties also dispute what happened after Cubbells asked Anderson to step out of the Subaru. Cubbells testifies that Anderson did not comply with the order and instead reached both his hands towards the right side of his body, out of Cubbells's view. Cubbells Rule 56 Statement ¶ 26; *see also* Anderson Dep. 160:7-13, Def.'s Ex. E, ECF No. 47-7 (describing Anderson reaching for his license and registration in glove compartment). The parties do not dispute that Cubbells then reached into the Subaru, grabbed both of Anderson's hands, and held onto Anderson's hands until Officer Shea[1] could assist him in removing Anderson from his vehicle. Cubbells Rule 56 Statement ¶ 27; Anderson First Rule 56 Statement ¶ 27. Cubbells testifies that once he and Officer Shea removed Anderson from the vehicle, they gave Anderson several verbal commands to put his hands behind his back and stop resisting, which Anderson ignored.

---

[1] The parties have not provided a full name for Officer Shea.

Cubbells Rule 56 Statement ¶ 28. The parties do not dispute that Officer Shea and Cubbells eventually handcuffed Anderson. *Id.* ¶ 29; Anderson First Rule 56 Statement ¶ 29.

Anderson disputes that, after Cubbells ordered him to step out of the Subaru, he reached with his hands towards the right side of his body and out of Cubbells's view or made any such motion. Anderson First Rule 56 Statement ¶ 26; *see also* Anderson Dep. 44:24-45:1, Def.'s Ex. D. Anderson also disputes that he failed to comply with Cubbells's and Officer Shea's orders to put his hands behind his back and stop resisting, he instead testifies that he did not resist. Anderson First Rule 56 Statement ¶ 28.

The parties further dispute what occurred after Cubbells and Officer Shea handcuffed Anderson. Cubbells testifies that, during the search of Anderson's person, the officers found a loaded .38 Taurus special revolver in Anderson's right pants pocket, but Anderson testifies that the firearm was actually under the seat in the Subaru. Cubbells Rule 56 Statement ¶ 30; Anderson First Rule 56 Statement ¶ 30. The parties do not dispute that Anderson did not have a permit for the firearm. Cubbells Rule 56 Statement ¶ 31. Cubbells also testifies that, during the search of Anderson's person, the officers found "several knotted plastic bags containing a green leafy substance, a white crystal substance, and numerous clear capsules containing a white substance" in his front shirt pocket. Cubbells Rule 56 Statement ¶ 32. Anderson disputes this and testifies that the only drugs that were on his person in the front shirt pocket were four or five capsules of Molly. Anderson Dep. 44:7-19, Def.'s Ex. D. Cubbells testifies that the officers also found a razor blade and $91.00 in cash in Anderson's left rear pocket, which Anderson disputes and states that the items were also in his front shirt pocket. Cubbells Rule 56 Statement ¶ 33; Anderson First Rule 56 Statement ¶ 33.

4.      **Alleged Use of Force**

Anderson testifies that, after he was handcuffed by one of the officers, they put him on the ground and had him sit on the curb towards the rear of the Subaru, while the officers searched the car.  Anderson Dep. 47:1-23, Def.'s Ex. D.  Anderson testifies that he complained that the handcuffs were too tight, which caused Cubbells to come around, pick him up, and hand him to Gilbert so that Gilbert could watch him and make sure he did not run away while the officers searched the car.  *Id.* 48:19-49:3.

Anderson testifies that, as Cubbells was loosening the handcuffs, Cubbells also struck Anderson four times in his right rib cage with an object that may have been a baton or a small flashlight.  Anderson Dep. 49:4-10, Def.'s Ex. D.  Anderson testifies that, as Cubbells was hitting him, Cubbells said "you want to have a fucking gun, huh," and while Anderson was whimpering about the pain in his ribs, Cubbells continued, "stop being a bitch, take it like a man."  *Id.*  Anderson testifies that when he was struck with the metal object four times, he cried out in pain, "like an ow, ow, ow, ow sound."  *Id.* 52:21-23.  Anderson testifies that after this, Cubbells did loosen the cuffs and put Anderson back on the curb and that, a minute later, he was placed in Officer Shea's vehicle.  *Id.* 49:10-12.  Anderson also testifies that, while Cubbells was hitting him in the ribs, Gilbert was standing next to Anderson and holding Anderson's arms.  *Id.* 49:19-22.  Defendants deny that Cubbells struck Anderson on November 3, 2013.  Cubbells Rule 56 Statement ¶ 77.

Anderson testifies that, after Cubbells struck him in the ribs with a metal object, he remained in "gut wrenching" pain that "took [his] breath away" and that he was crying. Anderson Dep. 50:1-3, 54:15-21, Def.'s Ex. D.  Anderson testifies, that during the booking process at the police station, he complained of pain and asked to go to the hospital, but the

booking officer said "[a]fter I process you," and Anderson was not sent to the hospital. *Id.* 54:22-55:7.

Following the November 3, 2013 arrest, Anderson was first seen by a medical professional on November 4, 2013 at the University of Connecticut Health Center for Correctional Managed Health Care ("UConn"). Cubbells Rule 56 Statement ¶ 81. Anderson admits in his Rule 56 Statement that the record of the November 4, 2013 visit to UConn did not refer to any pain in Anderson's ribs at the time of the visit. *Id.* ¶ 82; Anderson First Rule 56 Statement ¶ 82. Anderson testifies that on November 6, 2013, he had another visit at UConn and the record did reflect that he had a complaint of rib pain at that time. Anderson Dep. 58:18-24, Def.'s Ex. D. Anderson testifies that the sole reason for this visit was the pain in his ribs, that the staff at UConn recommended x-rays, that the x-rays were done and showed no fractures, and that he also complained of wrist pain from the handcuffs during this visit. *Id.* 59:9-60:19.

The parties do not dispute that the report from the x-ray of Anderson taken on November 8, 2013 indicated that there were no fractures or signs of trauma to the right hemithorax or ribs. Cubbells Rule 56 Statement ¶¶ 84-85. There is no dispute that, while Anderson has testified that there was bruising of his ribs, there is no notation of that in the medical records. *Id.* ¶ 86. There is also no dispute that there is no report of Anderson's wrist pain in the medical records, though there is a record of Anderson's complaint that there was numbness from the handcuffs. *Id.* ¶ 88-89. Anderson also does not dispute that he did not seek further treatment for his ribs or his wrists after he was released from jail on November 10, 2013 *Id.* ¶¶ 90-91.

The parties also do not dispute the following facts. The officers took Anderson into custody and the contents of the Subaru were itemized. Cubbells Rule 56 Statement ¶ 34. Anderson was not the owner of the 1998 Subaru and it was not registered in his name, instead

8

Ms. Boylan was the owner of record and the Subaru was registered in her name.  *Id.* ¶¶ 35-37. Anderson was arrested and charged with: criminal possession of a pistol or revolver, carrying a pistol/revolver without a permit, possession of narcotics with intent to sell, illegal possession near a school, drinking while operating a motor vehicle, restricted turns – failure to give proper signal and interfering with an officer.  *Id.* ¶ 38.

### B.    December 23, 2013

On December 23, 2013, at approximately 5:38 PM, Cubbells and Scanlon were on patrol together.  Cubbells Rule 56 Statement ¶ 39.  At this time, the officers were in a marked police vehicle on Willow Street, which Scanlon was driving, with Cubbells as a passenger.  *Id.* ¶ 40. While the police vehicle was traveling on Willow Street, a Subaru was traveling in front of the police vehicle, which Anderson was driving.  *Id.* ¶¶ 41, 47.  Anderson does not dispute these facts.  Anderson First Rule 56 Statement ¶¶ 39-41, 47.

#### 1.    Traffic Stop

The parties dispute what happened next.  Cubbells testifies that the Subaru abruptly turned towards the right side of the road without activating the turn signal, that it stopped on the side of the road with a portion of the car blocking traffic, and that the Subaru then abruptly pulled back into traffic in front of the police vehicle.  Cubbells Rule 56 Statement ¶ 42.  Cubbells testifies that, based off the erratic movements of the Subaru, the officers decided to execute a motor vehicle stop and turned on the emergency lights and siren.  *Id.* ¶ 43.  Anderson testifies that he made no such erratic movements in the Subaru and that he signaled before re-entering traffic.  Anderson First Rule 56 Statement ¶¶ 42-43.  The parties agree that the Subaru did not immediately stop and continued south on Willow Street at a steady speed.  *Id.* ¶ 44; Cubbells Rule 56 Statement ¶ 44.

The parties dispute what occurred before the Subaru stopped. Cubbells testified that the Subaru stopped at a red light and then drove through it, that the Subaru then passed several cars on the right, and that the Subaru drove through another red light. Cubbells Rule 56 Statement ¶ 45. Cubbells also testified that the driver of the Subaru was observed emptying the contents of a bag into his mouth and making several movements to his mouth with a cupped right hand. *Id.* ¶ 46. Cubbells further testifies that he did not know at the time that Anderson was the driver of the Subaru, until later when the driver got out of the vehicle. *Id.* ¶ 48.

Anderson disputes these facts and claims that the Subaru merely proceeded to a well-lit area without driving through any red lights. Anderson First Rule 56 Statement ¶ 45. Anderson denies emptying the contents of a bag into his mouth or making any movements to his mouth with his cupped right hand. *Id.* ¶ 46. Anderson also testifies that he believed that Cubbells knew he was driving the Subaru based on passed encounters with Cubbells. *Id.* ¶ 48. The parties agree that the Subaru eventually stopped near the intersection of Mitchell Avenue and Willow Street. *Id.* ¶ 49; Cubbells Rule 56 Statement ¶ 49.

### 2. Arrest and Search

The parties also dispute what happened after Anderson's vehicle came to a stop. Cubbells testifies that Scanlon ordered Anderson to slowly step out of the vehicle with his hands up. Cubbells Rule 56 Statement ¶ 50. Cubbells testifies that Anderson was then placed under arrest by Scanlon, and that Scanlon searched Anderson and found and seized a bag containing numerous empty pill capsules from Anderson's right coat pocket. *Id.* ¶ 51. Anderson disputes these facts and testifies that he exited the vehicle on his own, without having been ordered to by any of the officers. Anderson First Rule 56 Statement ¶ 50. Anderson further testifies that there were no drugs on his person and that, although the officers also claimed to have found drugs in

10

the car, there were actually no drugs in the car. *Id.* ¶ 51. Cubbells also testifies that the passenger in the Subaru, Derrick Gray, told Cubbells that Anderson had been dropping him off when Anderson suddenly saw the police and took off. Cubbells Rule 56 Statement ¶ 52. Cubbells also testifies that Mr. Gray stated that Anderson had swallowed a couple handfuls of pills. *Id.* ¶ 52. Anderson disputes this and claims that Mr. Gray made none of these statements to Cubbells, which Mr. Gray corroborates. Anderson First Rule 56 Statement ¶ 52; *see also* Gray Aff. ¶¶ 9, 13-14, Pl.'s Ex. D, ECF No. 54-6.

The parties do not dispute that Anderson was arrested for the following: unsafe movement of a vehicle, failure to obey a control signal, improper signaling for turns of stopping, disobeying signal of an officer, tampering with or fabricating physical evidence, illegal possession near a school, possession of narcotics with intent to sell, interfering with an officer, and passing on the right. Cubbells Rule 56 Statement ¶ 53.

### 3.  Post-Arrest Search

The parties dispute what happened after Cubbells and Officer Scanlon arrested Anderson. Cubbells testifies that he and Scanlon believed that Anderson had consumed an unknown quantity of drugs, so they decided to transport Anderson to St. Mary's Hospital ("St. Mary's") for medical treatment. Cubbells Rule 56 Statement ¶ 54. Anderson does not dispute that the officers transported him to St. Mary's, but testifies that he had not ingested drugs and exhibited no behavior consistent with having consumed drugs. Anderson First Rule 56 Statement ¶¶ 54-55. Cubbells testifies that, while they were en route to St. Mary's, Anderson began fidgeting with his hands, which were handcuffed behind his back, and that Anderson was reaching along his waistband, shifting around quite a bit, and trying to reach around to the sides of his pockets. Cubbells Rule 56 Statement ¶ 56. Anderson disputes this and testifies that he was not trying to

11

reach his pockets, but was only adjusting the handcuffs because they were tight and uncomfortable.  Anderson First Rule 56 Statement ¶ 56.

The parties agree that because Anderson was moving in the back seat, Cubbells and Officer Scanlon pulled over across the street from the courthouse at 400 Grand Street and searched Anderson again, but the parties dispute what the officers' motive was.  Cubbells Rule 56 Statement ¶¶ 57, 59; Anderson First Rule 56 Statement ¶¶ 57, 59.  Scanlon testifies that the search was for the officers' safety, Anderson's safety, and to preserve possible evidence.  Cubbells Rule 56 Statement ¶ 58.  Defendants also maintain that they are not sure whether Cubbells or Scanlon performed the actual search of Anderson.  *Id.* ¶ 60.  Anderson testifies that there was no safety concerns that necessitated the second search and that Cubbells was the one who conducted this second search.  Anderson First Rule 56 Statement ¶¶ 58, 60.

The parties dispute what happened during the search.  Anderson testifies that when Cubbells removed him from the car to conduct the search, Cubbells "put [him] against the car hard, [his] mouth hit the roof of the window ledge of the car and a little piece of [his] tooth chipped off a little bit."  Anderson Dep. 94:1-3, Def.'s Ex. D.  Anderson further testifies that at some point after the arrest, Cubbells punched Anderson in the head using a fist, on the left side of his head above his ear, by reaching through the open car door.  *Id.* 89:21-90:15.  Cubbells and Scanlon testified that at no time on December 23, 2013 did Anderson strike Anderson in any way.  Cubbells Rule 56 Statement ¶ 75.  Defendants further deny that Cubbells struck Anderson in the head on December 13, 2013.  *Id.* ¶ 77.  Anderson testifies that he had a slight headache due to Cubbells punching him in the head and that the headache lasted through the night.  Cubbells Rule 56 Statement ¶ 95.

As for the actual search, Anderson testified that Cubbells put one hand into Anderson's pants, which were jeans that were sagging; inside the underwear; and without loosening Anderson's belt.  Anderson Dep. 251:20-252:25, Def.'s Ex. E.  Anderson testifies that this search took only a few seconds, and that he wasn't sure which hand Cubbells used, but that Cubbells used only one hand to do the search, and that Cubbells's other hand was holding Anderson's arms, where the handcuffs were.  *Id.* 253:1-8.  According to Anderson, Cubbells's hand moved continuously during this search; that the hand moved directly between Anderson's butt cheeks in a swiping motion from front to back just one time, to see if there was anything there; and that Cubbells's hand did not enter Anderson's anal cavity.[2]  *Id.* 253:12-254:2.  Anderson further testifies that when Cubbells conducted the post-arrest search during the December 23, 2013 arrest, Scanlon was present and standing close enough to be the "lookout" and to nudge Cubbells to inform him that third party civilians were observing the encounter.  Anderson Dep. 94:13-18.

The parties do not dispute that once the search was completed, the Defendants took Anderson to St. Mary's.  Cubbells Rule 56 Statement ¶ 76.  Anderson was taken to St. Mary's twice on December 23, 2013.  *Id.* ¶ 93.  Anderson does not dispute that at no time during either of these visits did he complain about headaches, pain in his wrists, or pain in his anus area.  *Id.* ¶ 94.  Anderson also does not dispute that there are no entries in the emergency room report that suggest that Anderson complained of pain in his head, wrists, or anus area.  *Id.* ¶ 96.  The parties also do not dispute that on March 19, 2014, Anderson sought treatment at UConn with complaints of pain in his tooth.  *Id.* ¶ 97.

---

[2] The undisputed facts show that Anderson's deposition testimony contradicts his earlier responses to Defendants' interrogatories, where Anderson stated that Cubbells "put on gloves, reached inside my underwear, and jammed his fingers and hands into my anus and rectum . . . I cried out in pain."  Cubbells Rule 56 Statement ¶ 73.  Anderson's responses to Defendants' interrogatories also stated that Anderson had sustained bruising and painful swelling to his wrists and hands and severe pain to his anus and rectum area from the alleged sexual assault during the second search on December 23, 2013.  *Id.* ¶ 92.

The parties also do not dispute that, as of August 4, 2016, Anderson was still serving time for both the November 3, 2013 arrest and the December 23, 2013 arrest.  Cubbells Rule 56 Statement ¶ 78.  The charges from December 23, 2013 were nolled and Anderson pled guilty to the November 3, 2013 charges.  *Id.* ¶ 79.

## II.     STANDARD OF REVIEW

The Court will grant a motion for summary judgment if it determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine dispute of material fact exists.  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamic Co.*, 158 F.3d 622, 626 (2d Cir. 1998). The substantive law governing the case identifies which facts are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Boubolis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On summary judgment, the Court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  When reviewing the record on a motion for summary judgment, the Court must "assess the record in the light most favorable to the non-movant" and "draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  Inferences drawn in favor of the nonmovant must, however, be supported by evidence, and the "mere existence of a scintilla of evidence in support

of the [nonmovant's] position" is insufficient to defeat summary judgment.  *Liberty Lobby*, 477

U.S. at 252.  Conclusory allegations, conjecture, and speculation are insufficient to create

genuine issues of material fact.  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (internal

quotation marks omitted).

## III.   DISCUSSION

In his Second Amended Complaint, Anderson brings four claims against Defendants.

ECF No. 45.  Count One alleges, under Section 1983, that Cubbells and Scanlon conducted an

unreasonable search and seizure against Anderson in violation of the Fourth Amendment.

Second Amend. Compl. ¶¶ 29-30.  Count Two alleges, under Section 1983, that Cubbells and

Gilbert used unreasonable and excessive force against Anderson in violation of the Fourth

Amendment.  *Id.* ¶¶ 31-32.  Count Three alleges, under Section 1983, that the City of Waterbury

is also liable because its policies or customs exhibited deliberate indifference to constitutional

rights and caused the violation of Anderson's rights.  *Id.* ¶¶ 33-39.  Count Four alleges, under

Connecticut state law, that Cubbells is liable for the intentional infliction of emotional distress on

Anderson.  *Id.* ¶¶ 40-47.  Defendants move for summary judgment on all counts.  ECF No. 47;

ECF No. 48.

### A.   Fourteenth Amendment Equal Protection

The first paragraph of the Second Amended Complaint also alludes to alleged violations

of Anderson's right to equal protection under the Fourteenth Amendment of the United States

Constitution, Second Amend. Compl. ¶ 1, but the Second Amended Complaint omits any other

reference to an equal protection claim when it comes to the four counts that it formally raises.

*Id.* ¶¶ 29-47. Anderson's summary judgment briefing also refers to an equal protection claim that

was not formally raised in the Second Amended Complaint.  *See* Anderson First Br. at 17-20.

15

Defendants address Anderson's equal protection claim in their summary judgment briefs. *See* Waterbury Def.'s Br. at 25; Cubbells Br. at 22-24.

To the extent that Anderson attempts to bring an equal protection claim against the Defendants, his Second Amended Complaint fails to allege "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The only potentially admissible evidence that Anderson alleges in support of the equal protection claim are (a) that he had an encounter with Cubbells on October 3 or October 6, 2013, during which Cubbells referred to Anderson and other person of color as "you people" and (b) that Cubbells then initiated and participated in the November 3, 2013 and December 23, 2013 encounters with Anderson, knowing that Anderson was the driver of the vehicle each time before initiating the traffic stops. *See* Anderson First Br. at 17-20.

Anderson also attempts to point to likely inadmissible evidence relating to Cubbells and other individuals that allegedly shows that, after the events involving Anderson, Cubbells was eventually terminated from his employment as a Waterbury police officer the following year, partially in relation to alleged racially insensitive comments another excessive force complaint involving a black victim. *See* Anderson First Br. at 19.  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  Furthermore, the "probative value" of such evidence may be "substantially outweighed by a danger of . . . unfair prejudice," providing another reason to exclude such evidence.  Fed. R. Evid. 403; *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (holding that district court properly excluded evidence of defendant police officer's history of civilian complaints predating incident with plaintiff because "introducing evidence of bad acts to show the defendant's propensity to

16

commit such acts" is prohibited by Fed. R. Evid. 404(b) and to the extent that plaintiff argued the

evidence could show a "pattern of conduct" it would only be admissible if the other complaints

"arose under nearly identical circumstances to the incident for which the defendant was then on

trial"); *Anthony v. City of Bridgeport*, No. 3:12-CV-619 (WIG), 2015 WL 3745302, at *4 (D.

Conn. June 15, 2015) (excluding evidence of other complaints involving defendant officer

because "[h]ow the officer behaved on other occasions, under different sets of facts and

circumstances, is not germane to the issue of the constitutionality of the conduct being tried in

this instance").

Because evidence of another individual's excessive force complaint against Cubbells or

Cubbells's alleged racially insensitive comments to other individuals would likely not be

admissible at trial, it is likely also not admissible for deciding summary judgment. *See*

*Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009)

(finding that "[a] district court deciding a summary judgment motion has broad discretion in

choosing whether to admit evidence" and that "[t]he principles governing admissibility of

evidence" are the same at summary judgment as during trial); *Raskin v. Wyatt Co.*, 125 F.3d 55,

66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on

a motion for summary judgment.").  Regardless of whether such evidence is admitted,

Anderson's Second Amended Complaint does not allege facts sufficient to support any kind of

Fourteenth Amendment equal protection claim, as discussed below.

A plaintiff can plead discrimination in violation of Fourteenth Amendment equal

protection in the following ways, by "point[ing] to a law or policy that expressly classifies

persons on the basis of race," by "identify[ing] a facially neutral law or policy that has been

applied in an intentionally discriminatory manner," or "alleg[ing] that a facially neutral statute or

policy has an adverse effect and that it was motivated by discriminatory animus." *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotation marks omitted). Anderson's allegations are not sufficient to state an equal protection claim on any of these grounds. "Claims of race-based discrimination under the Equal Protection Clause require that intentional discrimination be alleged in a non-conclusory fashion," which the Second Amended Complaint fails to do. *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (internal quotation marks omitted) (citing *Clyburn v. Shields*, 33 Fed. Appx. 552, 555 (2d Cir. 2002) (summary order)).

Nor can Anderson make out a "class of one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," which requires Anderson to show that " (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and "(ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010); *see also Olivera v. Town of Woodbury, N.Y.*, 281 F. Supp. 2d 674, 681 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 298 (2d Cir. 2004) (analyzing equal protection claim as class of one claim where plaintiff alleged that defendant police officers racially profiled him but did "not seek to challenge a race-based statute or policy of the police" or allege "that the defendants' actions had a disparate impact on his minority group"). Anderson fails to point to any comparators and he cannot, therefore, make out a class of one equal protection based on alleged racial profiling by Cubbells or the other Defendants. *See Olivera*, 281 F. Supp. 2d at 683 (granting summary judgment for defendant

police officer on class of one racial profiling claim because plaintiff could not point to similarly situated comparators from outside "his protected class" who were treated differently).

### A.    Count One: Fourth Amendment Search and Seizure Claim

Count One of Anderson's Second Amended Complaint brings a claim under Section 1983, alleging that the individual Defendants violated the Fourth Amendment by subjecting him to an unreasonable search and seizure through the November 3, 2013 and December 23, 2013 arrests.  Second Amend. Compl. ¶¶ 29-30.  In response to the Defendants' motions for summary judgment, Anderson concedes his Fourth Amendment search and seizure claim.  *See* Anderson First Br. at 11 ("The plaintiff does not challenge summary judgment as to the false arrest claim."); Anderson Second Br. at 11 ("The plaintiff does not challenge summary judgment as to the false arrest claim.").  Instead, as to his Fourth Amendment claims against the individual Defendants, Anderson argues only that the Defendants may have used excessive force against him.  *See* Anderson First Br. at 11-17; Anderson Second Br. at 11-17.  The Court therefore grants Defendants' motion for summary judgment as to Count One.

### B.    Count Two: Fourth Amendment Excessive Force Claim

Counts Two of Anderson's Second Amended Complaint brings a claim under Section 1983, alleging that the individual Defendants violated the Fourth Amendment by subjecting him to unreasonable and excessive force.  Second Amend. Compl. ¶¶ 31-32.  Specifically, Anderson argues that Cubbells's post-arrest search on December 23, 2013 amounted to a sexual assault that was an unreasonable use of force.  Anderson First Br. at 11-13; Anderson Second Br. at 11-15. Anderson also argues that Cubbells assaulted him multiple times during the November 3, 2013 and December 23, 2013 arrests.  Anderson First Br. at 13-17; Anderson Second Br. at 16-17. Defendants move for summary judgment on Count Two.

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In determining whether the officers' use of force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case." *Id.* (internal quotation marks omitted). Furthermore, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted).

Even if a reasonable jury could find that Defendants had violated Anderson's Fourth Amendment rights, Defendants may still be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (affirming district court's summary judgment ruling that though defendants arrested plaintiff without probable cause and conducted unreasonable search under the Fourth Amendment defendants were nevertheless entitled to summary judgment on qualified immunity grounds). "Qualified immunity protects federal and state officials from money damages and unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields

20

police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)).  It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick*, 699 F.3d at 219.  The Defendants all raise qualified immunity as a defense in their briefs.  *See* Cubbells Br. at 14; Waterbury Def.'s Br. at 16-17.

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two potential steps or questions that guide the inquiry.  *See Zalaski v. City of Hartford*, 723 F.3d 382, 388-89 (2d Cir. 2013).  First, the court considers whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Id.*  Second, if the answer is no, "further inquiry is unnecessary because where there is no viable constitutional claim," but if the answer is yes, "or at least not definitively no," the court may move on to the second question "was the right clearly established at the time of defendant's actions?" *Id.*  Courts need not consider these two questions in order, and may consider the latter question first, which may be  "particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Id.* (internal quotation marks omitted) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

### 1.    December 23rd Post-Arrest Search

Anderson argues that when Cubbells performed a second search on him after Cubbells and Scanlon had already arrested him on December 23, 2013 and the police vehicle was on its way to St. Mary's, the search constituted a "sexual assault" and unreasonable police action that violates the Fourth Amendment.  *See* Anderson First Br. at 11-13.  Cubbells claims that the post-

arrest search of Anderson was reasonable because it was a brief search, with the undisputed facts
and Anderson's own deposition testimony showing that it took only a few seconds, with
Cubbells using his hand to swipe between Anderson's butt cheeks in one single swiping motion
from front to back.  *See* Cubbells Br. at 15-18; *see also* Anderson Dep. 253:1-254:2.

"Beyond the specific proscription of excessive force, the Fourth Amendment generally
proscribes 'unreasonable intrusions on one's bodily integrity,' and other harassing and abusive
behavior that rises to the level of 'unreasonable seizure.'"  *Fontana v. Haskin*, 262 F.3d 871,
878-79 (9th Cir. 2001) (internal citations omitted).  Thus, courts in this Circuit have found that
claims that a police officer's actions during and following the arrest of a suspect rise to the level
of a sexual assault are "properly analyzed under the Fourth Amendment" and could give rise to
"at least one genuine issue of material fact that precludes summary judgment on the Fourth
Amendment claim" *Love v. Town of Granby*, 3:02-CV-1960 (EBB), 2004 WL 1683159, at *5-6
(D. Conn. July 12, 2004), *adopted by*, Order, *Love v. Town of Granby*, 3:02-CV-1960 (EBB) (D.
Conn. July 28, 2004), ECF No. 70 (denying summary judgment to defendants in case where
plaintiff claimed that police officers committed sexual assault and battery during a traffic stop,
pat-down, and his subsequent arrest); *see also Santiago v. City of Yonkers Yonkers*, No. 13-CV-
1077 (TPG), 2015 WL 6914799, at *6 (S.D.N.Y. Oct. 30, 2015) ("Accordingly, and in the eyes
of the court, the search of plaintiff raises two distinct Fourth Amendment questions that bear on
plaintiff's rights to be free from sexual assault at the hands of a police officer during an arrest and
to be free from an unreasonable search.") (discussing case where plaintiff alleged that defendant
police officer inserted fingers into plaintiff's rectum).  As with other Fourth Amendment
inquiries, the determination of whether the police officers' actions are "'reasonable' under the
Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).[3]

The parties dispute many of the circumstances surrounding Cubbells's post-arrest search of Anderson.  The parties do not, however, contest that Anderson had been shifting around or squirming in the back of the police vehicle while handcuffed, Anderson First Rule 56 Statement ¶ 56, and they do not contest that Cubbells's search took only a few seconds and involved Cubbells using a hand to make one swiping motion between Anderson's butt cheeks under his underwear, without loosening his belt or removing any of his clothing.  *See id.* 253:1-254:2.

Anderson, however, characterizes this search as an assault, while Cubbells argues that it was a legitimate search.  This is the type of "'he said, []he said' account on which courts tend not to take a side at the summary judgment stage."  *Santiago*, 2015 WL 6914799 at *7.  Because Anderson claims that Cubbells's actions in conducting the post-arrest search rise to the level of a sexual assault, there is a genuine dispute of material fact regarding whether Cubbells's actions were unreasonable under the Fourth Amendment.  *See Love*, 2004 WL 1683159 at *5.  Thus, the Court denies summary judgment as to whether Cubbells's December 23, 2013 post-arrest search was unreasonable conduct in violation of the Fourth Amendment.[4]

---

[3] Cubbells argues that the Court should find that the post-arrest search of Anderson was a reasonable search for weapons.  Where a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," a police officer has "narrowly drawn authority" to conduct "a reasonable search for weapons" for his own protection if he "has reason to believe that he is dealing with an armed and dangerous individual."  *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  The reasonableness of such a search must take into account the "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience."  *Id.*  *Terry* may, however, be inapplicable, as it concerned a search that the police officer conducted at the start of his encounter with the plaintiff, rather than a search conducted after the plaintiff had already been patted down or searched once, arrested, and was being transported by the police officers.  *See id.* at 4.

[4] Because it appears that Anderson has otherwise conceded his unreasonable search and arrest claims in Count One of the Second Amended Complaint, *see* Anderson First Br. at 11; Anderson Second Br. at 11, it is unclear whether he raises the claim regarding the December 23, 2013 post-arrest search as an unreasonable search and seizure claim under Count One or an unreasonable and excessive force claim under Count Two.  As one court in this Circuit has noted, such a claim may "raise[] two distinct Fourth Amendment questions," one that "bear[s] on plaintiff's rights to be free from sexual assault at the hands of a police officer during an arrest" and one that concerns the right *"to be free from an unreasonable search."*  *Santiago*, 2015 WL 6914799 at *6.  At the oral argument regarding these

### 2.     November 3ʳᵈ and December 23ʳᵈ Use of Force

In addition to the alleged sexual assault through the December 23, 2013 post-arrest

search, Anderson has also testified that Cubbells used excessive force on him in the following

ways during the November 3, 2013 and December 23, 2013 arrests: (a) by striking him four

times in the ribs with a metal object during the November 3, 2013 arrest; (b) by overtightening

his handcuffs during the November 3, 2013 arrest; (c) by punching him in the head while he was

cuffed during the December 23, 2013 arrest; and (d) by slamming him hard against the police

vehicle and cracking his tooth during the December 23, 2013 arrest.

Police officers' use of force is excessive and will violate the Fourth Amendment, if the

use of force was objectively unreasonable in light of the facts and circumstances surrounding the

incident, regardless of the officers' underlying intent or motives.  *See Maxwell*, 380 F.3d at 108.

The Court must analyze "the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake" in order to

determine whether the use of force was unreasonable.  *Graham*, 490 U.S. at 396.

Because the Fourth Amendment test for reasonableness of an officer's use of force is "not

capable of precise definition or mechanical application," *Graham*, 490 U.S. at 396, "[i]t would

be an uncomfortable exercise to determine" whether officers violated a plaintiff's Fourth

Amendment right to be free from excessive force because such a determination "depends on a

kaleidoscope of facts."  *Hodge v. City of Long Beach*, 425 F. App'x 33, 34-35 (2d Cir. 2011)

(summary order) (internal quotation marks omitted).  In these circumstances, a court may

consider whether Defendants are entitled to summary judgment on qualified immunity grounds

---

motions, which was held on March 23, 2017, ECF No. 67, Anderson conceded Count One, the unreasonable search
and seizure claims, therefore the Court construes the Fourth Amendment claims regarding the December 23, 2013
post-arrest search as being brought under Count Two.

under the second prong of the qualified immunity analysis, under which it is appropriate to grant summary judgment to Defendants if "no rational jury could conclude . . . that the right [at issue] was clearly established at the time of the challenged conduct." *Coollick*, 699 F.3d at 219; *see also Zalaski*, 723 F.3d at 388-89.

Although "[t]he right of an individual not to be subjected to excessive force has long been clearly established," *Calamia v. City of N.Y.*, 879 F.2d 1025, 1036 (2d Cir. 1989), the Second Circuit has also found that "the qualified immunity defense is generally available against excessive force claims." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks omitted). If "officers of reasonable competence would disagree" regarding whether a defendant officer's actions were legal or not "in its particular factual context, the officer is entitled to qualified immunity." *Id.* (internal quotation marks omitted). Only if it "is obvious that no reasonably competent officer would have taken such action," will the officer not be immune. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1985)). Thus, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).

### a.     Handcuffs

Anderson has testified that Cubbells had his handcuffs too tight during the November 3, 2013 arrest. Anderson Dep. 47:1-23, 48:19-49:3. Courts in this Circuit have sometimes held that, as a matter of law, minor injuries arising solely from handcuffs or tightened handcuffs do not support an excessive force claim. *See Regels v. Giardono*, 113 F. Supp. 3d 574, 599 (N.D.N.Y. 2015) (dismissing excessive force claim at summary judgment stage where plaintiff's

sole allegation of excessive force was that she had been briefly handcuffed to a bed with no medical records showing "causally related injury" and noting that "[i]njuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, [and] claims of minor discomfort from tight handcuffing"); *Torres v. Town of Bristol*, No. 3:13-CV-1335 (SRU), 2015 WL 1442722, at *6-7 (D. Conn. Mar. 27, 2015) (granting summary judgment on excessive force claim where plaintiff alleged "that the handcuffs caused him to experience severe pain" but "he sought no medical treatment for any alleged injuries and he claims to have suffered only indentations or scrapes to his wrists" and he "provided no evidence of any injuries suffered" such that "no reasonable jury could find other than that the force used was *de minimis*").

In light of *Regels* and *Torres*, which granted summary judgment in favor of defendants over excessive force claims concerning alleged injuries from tightened handcuffs in the absence of medical records establishing that any type of physical injury resulted from the handcuffs, Cubbells's actions in tightening Anderson's handcuffs fall "in the hazy border between excessive and acceptable force," and do not "clearly establish" that Cubbells's actions in applying overtightened handcuffs to Anderson violated his Fourth Amendment rights. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Thus, the Court finds that Cubbells is entitled to summary judgment, on qualified immunity grounds, as to Anderson's Fourth Amendment excessive force claim with respect to the allegedly overtightened handcuffs during the November 3, 2013 arrest.

### b.      Other Allegations

Anderson testifies that Cubbells also used excessive force against him in other ways during both the November 3, 2013 and December 23, 2013 arrests, (a) by striking him four times in the ribs with a metal object during the November 3, 2013 arrest; (b) by punching him in the

head while he was cuffed during the December 23, 2013 arrest; and (c) by slamming him hard against the police vehicle and cracking his tooth during the December 23, 2013 arrest.  Cubbells denies that any of these incidents occurred.

Where "[t]he parties' versions of the material facts differ markedly" with regards to a Fourth Amendment excessive force claim, such differences generally mean that "[t]he issue of excessive force [is] for the jury, whose unique task it [is] to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (per curiam).  Such differences may "also preclude summary judgment on the defense of qualified immunity." *Id.* (citing *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir.1998)).  "[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness" of a police officer's use of force under the Fourth Amendment.  *Kerman v. City of N.Y.*, 261 F.3d 229, 240 (2d Cir. 2001).

The parties dispute "the nature and quality of the intrusion on the individual's Fourth Amendment interests," namely whether Cubbells actually used the force that Anderson testifies to, *Graham*, 490 U.S. at 396, and there are also facts in dispute that are "material to a determination of reasonableness" under the Fourth Amendment.  *Kerman*, 261 F.3d at 240. Questions of whether Cubbells actually struck Anderson during the November 3, 2013 or December 23, 2013 arrests or whether Cubbells actually slammed Anderson against the police vehicle hard enough to chip Anderson's tooth on December 23, 2013 are properly for the jury to decide.  The Court therefore denies summary judgment as to whether Cubbells used excessive force on Anderson through these disputed actions.

### 3.     Gilbert and Scanlon's Failure to Intervene

Anderson concedes that he has no independent claim against Defendants Gilbert and
Scanlon for excessive force as Anderson alleges only that Cubbells actually used excessive force
against him.  *See* Anderson Second Br. at 17 ("The plaintiff does not contest summary judgment
relative to excessive force claims against defendants Scanlon or Gilbert.").  Instead, Anderson
argues that Gilbert and Scanlon may be liable for their failure to intervene when Cubbells
allegedly used excessive force against him on November 3, 2013 and December 23, 2013.  *See*
*id.* at 14-17.

"A police officer is under a duty to intercede and prevent fellow officers from subjecting
a citizen to excessive force, and may be held liable for his failure to do so if he observes the use
of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d
Cir. 2016); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely
recognized that all law enforcement officials have an affirmative duty to intervene to protect the
constitutional rights of citizens from infringement by other law enforcement officers in their
presence.").  "Liability attaches on the theory that the officer" that fails to intervene "becomes a
'tacit collaborator' in the illegality." *Figueroa*, 825 F.3d at 106.  Such liability for failure to
interview "may attach only when (1) the officer had a realistic opportunity to intervene and
prevent the harm; (2) a reasonable person in the officer's position would know that the victim's
constitutional rights were being violated; and (3) the officer does not take reasonable steps to
intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F.
App'x 18 (2d Cir. 2012).  Additionally, "[f]ailure to intervene claims are contingent upon the
disposition of the primary claims underlying the failure to intervene claim," so to the extent that
there is no valid claim that one police officer violated an individual's rights, there also will be no

28

valid failure to intervene claim arising from that same course of events.  *Usavage v. Port Auth. of N.Y. & New Jersey*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013).

"Whether the officer had a realistic opportunity to intervene is normally a question for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  *Terebesi*, 764 F.3d at 244 (internal quotation marks omitted).  The Second Circuit has previously found that there was "insufficient evidence to permit a jury reasonably to conclude that [defendant's] failure to intercede" gave rise to liability with regards to a series of "three blows . . . struck in such rapid succession that [defendant] had no realistic opportunity to prevent them."  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (noting that there was an issue for the jury as to whether the defendant may be liable for failure to intervene as to another officer's "dragging of [plaintiff] across the floor" after the rapid series of three blows).  In *O'Neill*, plaintiff, the defendant police officers who had actually struck plaintiff, and the officer that plaintiff alleged had failed to intervene were all located "[i]n the station's detention area at the time of the events giving rise to the Fourth Amendment excessive force claims.  *Id.* at 10.

Anderson testifies that Cubbells struck him in the ribs with a metal object following the November 3, 2013 arrest and that Gilbert held his handcuffed arms and, therefore, stood extremely close by.  Anderson Dep. 49:19-22.  Anderson further testifies that, when Cubbells conducted the post-arrest search during the December 23, 2013 arrest, Scanlon was present and standing close enough to be the "lookout" and to nudge Cubbells to inform him that third party civilians were observing the encounter.  *Id.* 94:13-18.  Anderson does not, however, offer any testimony that Scanlon was in close proximity when Cubbells punched him in the head, and in his brief, Anderson argues that Scanlon is not entitled to summary judgment as to the failure to intervene claim only in relation to the post-arrest search.  *See* Anderson Second Br. at 14-16.

Gilbert and Scanlon argue that they had no realistic opportunity to intervene, *see* Waterbury Def.'s Br. 23-24, which Anderson disputes as he testifies that they were close at hand when Cubbells struck Anderson in the ribs on November 3, 2013 and when conducting the post-arrest search and struck him or slammed him against the police vehicle on December 23, 2013, respectively.  While the Second Circuit has once found that an officer had no realistic opportunity to intervene as a matter of law where a series of blows were administered in rapid succession, this was in a case where the defendant police officers and plaintiff were all in the same room, "[i]n the station's detention area," but not necessarily in close enough proximity for one officer to immediately intervene against the other.  *See O'Neill*, 839 F.2d at 10-11.

Here, Anderson testified that Gilbert was holding one of his arms while Cubbells was loosening his handcuffs and struck him in the ribs four times rapidly.  A jury could find that Gilbert was standing close enough that he could have immediately intervened when Cubbells first began striking Anderson, even if the four strikes occurred in a few seconds.  *See Figueroa*, 825 F.3d at 106-07 (vacating district court decision granting judgment after trial for police officers on failure to intervene claim where the alleged assault "lasted less than twenty seconds" and finding such a "bright-line rule unsupportable").

As to Scanlon, Anderson testifies that he was standing close enough to nudge Cubbells and claims that there were third party witnesses. Although Anderson admits that the search was brief, again, a jury could find that Scanlon was standing close enough to immediately intervene. Because the question of whether an officer had a realistic opportunity to intervene is a "question for the jury," *see Figueroa*, 825 F.3d at 106-07 (finding that district court had "strayed into the realm of improper fact-finding" through its "distillation of a hard-and-fast temporal cutoff" for the failure to intervene claim), the Court denies summary judgment to Gilbert and Scanlon as to

Anderson's claim that they failed to intervene when Cubbells struck Anderson in the ribs in November (Gilbert) or conducted the post-arrest search in December (Scanlon).  *Terebesi*, 764 F.3d at 244.

###    C.    Count Three: *Monell* Claim

Count Three of the Second Amended Complaint brings a claim against the City of Waterbury, alleging a policy or custom of deliberate indifferent to constitutional rights that caused the violation of Anderson's constitutional rights.  Second Amend Compl. ¶¶ 33-39.  Such claims may be brought under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). In response to Defendants' summary judgment motions, Anderson "does not contest summary judgment regarding the *Monell* claim against [the] City of Waterbury."  Anderson Second Br. at 21.  The Court therefore grants Defendants' motions for summary judgment as to Count Three. Because Anderson has conceded his *Monell* claim, he no longer has any claim against the municipal Defendant in this case, either the Waterbury Police Department or the City of Waterbury.

###    D.    Count Four: Intentional Infliction of Emotional Distress Claim

Although Defendants move for summary judgment on the Second Amended Complaint in its entirety, Defendants' briefs fail to discuss Count Four, alleging the intentional infliction of emotional distress in violation of Connecticut law.  A court may only grant summary judgment if the moving party meets its "burden of showing that no genuine factual dispute exists," such that the moving party is "entitled to a judgment as a matter of law."  *Carlton*, 202 F.3d at 133.  By failing to discuss the intentional infliction of emotional distress claim in any way, the Defendants

fail to meet their burden and cannot prevail on their summary judgment motion as to Count

Four.[5]  The Court therefore denies Defendants' motions for summary judgment as to Count Four.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the

Defendants' motions for summary judgment.  Specifically, the Court grants summary judgment

as to Count One, alleging unreasonable search and seizure and as to Count Three, alleging that

the City of Waterbury or Waterbury Police Department are liable because of policies or customs

exhibiting deliberate indifference to constitutional rights, in part because Anderson concedes

these arguments.  Defendant Waterbury Police Department is, therefore, terminated from this

case.

The Court denies summary judgment as to Count Two, as to Anderson's claim against

Cubbells regarding the December 23, 2013 post-arrest search; as to Anderson's claim that

Cubbells struck him on November 3, 2013 and struck him and slammed him against the police

vehicle on December 23, 2013; and as to Gilbert and Scanlon's failure to intervene claims in

relation to these incidents.  The Court also denies summary judgment as to Count Four,

Anderson's claim that Cubbells is liable for intentional infliction of emotional distress, as

Defendants' motions for summary judgment fail to discuss this claim.

SO ORDERED at Bridgeport, Connecticut, this 28th day of March, 2017.


    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[5] Andersons' briefs in response to Defendants' motions for summary judgment also fail to discuss the intentional infliction of emotional distress claim.